# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

20-cv-1464 WMW/KMM

Thomas Evenstad,
Plaintiff

v.

Paul Schnell, Michelle Smith,
Nate Knutson, Karen Robinson,
Nan Larson, Steve Huot: MN
Dep't of Corrections-Central Office,
Rebecca Holmes, Will McDonald:
MN DOC Hearings & Release Unit (HRU),
Eddie Miles, Carol Krippner,
Roger Baburam, Dan Raden, Lt. Halvorson,
Lt. Baird, Sgt. M. Krengel, Sgt. Coggisberg,
Shawn Iacono: MCF-St. Cloud,
Minnesota Department of Corrections,
State of Minnesota,
Defendants

## COMPLAINT

### JURY TRIAL DEMANDED

RECEIVED BY MAIL
JUN 25 2020
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
JUN 25 2020
U.S. DISTRICT COURT MPLS

---

Plaintiff brings this action against Commissioner of Corrections Paul Schnell, Deputy Commissioner Michelle Smith, Assistant Commissioner Nate Knudson, Health Services Director Nan Larson, Behavioral Services Director Steve Huot, Policy and Legal Director Karen Robinson (Central Office), HRU Director Rebecca Holmes, HRU Hearing officer Will McDonald, MCF-St. Cloud Warden Eddie Miles, Associate Warden Carol Krippner, Program Director Roger Baburam, Program Director Dan Raden, Lt. Halvorson, Lt. Baird, Sgt. M. Krengel, Sgt. Coggisberg, & Correctional Officer Shawn Iacono.

## NATURE OF THE CASE

1. This case arises under 42 U.S.C. § 1983 and asserts violations of Plaintiff's rights under the First Amendment, the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment and the Equal Protection Clause of the U.S. Constitution. Plaintiff also asserts First Amendment retaliation and mental & physical torture.

## INTRODUCTION

2. In this groundbreaking lawsuit, Plaintiff Thomas Evenstad ("Evenstad") challenges the constitutionality of the conditions of confinement at the Minnesota Correctional Facility Saint Cloud's ("MCF-SCL") Living Unit E ("LUE"), also known as "E-House."

3. LUE is the Intake/Orientation Unit for all adult male prisoners entering the Minnesota Department of Corrections ("DOC") including only recently parole release violators ("RV") due to the COVID-19 Pandemic.

4. Evenstad is imprisoned as an RV for up to 90 days since his parole was revoked on May 26, 2020 solely because of ~~[struck]~~ the DOC's failure/refusal to provide suitable (and constitutional) housing, in blatant violation of the State Court's rulings in State ex rel. Marlowe v Fabian, 755 N.W.2d 792 (Minn.App. 2008) & State ex rel. Ford v Schnell, 933 N.W.2d 393 (Sept. 11, 2019)

—2—

5. For the "crime" of homelessness Evenstad has been sent to prison - a known breeding ground for infections - in the midst of the COVID-19 Pandemic, with Evenstad 54.9 years old, in poor health due to 15 months of 22-24 hour per day lockdown in jails/prisons and suffering from hypertension (high blood pressure) he takes prescribed medication for and respiratory/breathing problems for which he is prescribed an albuterol inhaler for. Evenstad's age combined with his underlying health conditions put him at high risk of severe complications, including death should he become infected with the Novel Coronavirus.

6. The State of Wisconsin has released over 1600 prisoners prior to their release date due to COVID-19, while the DOC has released about 130 prisoners according to Defendant Paul Schnell's June 16, 2020 Memo.

7. Evenstad asserts the Draconian conditions of confinement in LUE (no gym, yard, library, TV's, radio, books) where prisoners are double bunked in cells built in the 19th Century for one prisoner where two men must share approximately 45 sq. ft. of cell space for over 23 hours per day every day - including prisoners on the mandated 14-Day "Quarantine" period - which Evenstad has been subjected to twice since May 27, 2020 shocks the conscience of the community & meets the standard for cruel and unusual punishment the 8th Amdmt prohibits.

8. As far as the "groundbreaking" *a case of first impression and potentially* nature of this lawsuit, in what Evenstad believes to be the most significant prisoner rights action to end mass incarceration and positively impact Public Safety in Minnesota and ~~likely~~ *possibly* United States history, Evenstad seeks here to forever break the bondage of the modern-day slavery/human chattel system commonly known as the "revolving door" and "doing life on the installment plan" by destroying the slave wage monopoly the DOC has *held* on prisoners that is the primary cause of the inability of men and women to return to their communities as productive, successful law abiding citizens.

9. Evenstad's vision of revolutionary change to finally break the age-old oppressive, racist, ~~most~~ broken & failed criminal "justice" system's prison component is a vision that can be achieved here and now by this Court's application of the United States Supreme Court's holdings in Packingham v North Carolina, 137 S.Ct. 1730 (June 19, 2017) to extend to State prisoners in Minnesota in this landmark challenge of the constitutionality of DOC Policy 303.040 that prohibits inmates from internet access as well as of State law (Minn. Stat. 243.556, Subd. 1: "No adult inmate in a state correctional facility may use or have any access to any Internet service...") that prohibits this access. Evenstad asserts that Packingham renders this law and policy unconstitutional.

-4-

10. "A functional, rather than formalistic, assessment of <u>Packingham</u> suggests that restrictions on liberty should be narrowly tailored, regardless of whether the individual is on supervision or incarcerated. Although this Article does not take up the precise question of prisoners' Internet rights after <u>Packingham</u>, well-established precedent guarantees First Amendment protections for prisoners. See <u>Pell v Procunier</u>, 417 U.S. 817, 822 (1974) ("A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); <u>Turner v Safley</u>, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Quoting Jacob Hutt, OFFLINE: <u>Challenging Internet and Social Media Bans for Individuals on Supervision for Sex Offenses</u>, 43 N.Y.U. Rev. L. & Soc. Change 663 (2019) FN169.

11. <u>Packingham</u> clearly establishes the "fundamental principle of the First Amendment that <u>all</u> persons have access to places where they can speak and listen," with no carve-out for incarcerated persons — whether in jail or prison. <u>Packingham</u>, 137 S.Ct. at 1735 (emphasis added).

12. More significantly, Justice Kennedy writes regarding who can benefit from social media, "Even convicted criminals — and in some instances especially convicted criminals — might receive legitimate benefits from these means for access to the world of ideas,

-5-

in particular if they seek to reform and to pursue lawful and rewarding lives." Id. at 1737 (emphasis added). Evenstad asserts here this is (or should be) the objective of the corrections system. Justice Kennedy's emphasis on "convicted criminals" as particularly well-suited to benefit from social media is a mirror image of the reintegrative and rehabilitative purposes of corrections, at least on paper if not in actual practice.

13. Evenstad asserts that even as a state prisoner he has a fundamental First Amendment right to access and use the Internet, including social media for such activities as political speech, educational or religious studies, economic activity such as work from home jobs that can be worked from prison cell to creating and promoting his own business or businesses online.

14. Evenstad asserts his right to speech involving interpersonal relationships and contends the Policy and Statute banning the Internet and social media violates his First Amendment rights. Such a ban shuts down an integral tool of communication between prisoners and their loved ones.

15. Evenstad maintains that cutting off all access to the Internet inhibits rehabilitation by constraining his ability to communicate with friends and family, seek progress, closure, forgiveness, love, support and other things from those close to him that require the most basic Internet uses: a Facebook chat, an email, a Skype session, Twitter DM, etc.

- 6 -

## THE PARTIES

16. Defendant Schnell is the Commissioner of Corrections and has final authority to set the DOC's policies and practices, including but not limited to implementation of informal discipline/Loss of Privileges ("LOP"), use of closed-front Segregation cells, double-bunking of Quarantined inmates for COVID-19, access to yard, gym, library and internet access/use.

17. Defendants McDonald, Holmes, Huot, Larson, Robinson, Knudson and Smith are in the chain-of-command to Schnell.

18. Defendants Iacono, Goggisberg, Krengel, Baird, Halvorson, Raden, Baburam, Krippner are in the facility chain-of-command to Defendant Miles, who, in turn is in the chain-of-command to Defendants listed in 16. & 17.

19. All Defendants are sued in their individual and official capacities.

20. Plaintiff Thomas Evenstad is a prisoner at MCF-SCL, residing in LUE following three days (6/17-19/20) in the Segregation ("Seg") Unit after arriving at MCF-SCL on May 27, 2020.

## FACTS

21. Evenstad was paroled from MCF-Rush City on April 27, 2020.

—7—

Evenstad was placed at RS Eden-Ashland under supervision by Ramsey County Community Corrections ("RCDOCC") on Intensive Supervised Release ("ISR").

22. Evenstad filed a federal lawsuit against RS Eden on May 7, 2020, and against RCDOCC on May 8, 2020 alleging violations of Evenstad's First Amendment rights. See Evenstad v Hood, 20-CV-1101; Evenstad v Klavins, 20-CV-1119.

23. On May 9, 2020, Evenstad was arrested on a DOC warrant generated from RCDOCC due to RS Eden terminating Evenstad from its program despite Evenstad's program compliance and absence of Major or Serious Program Violations. (See Hood)

24. From May 9 to May 26, Defendants McDonald, Holmes, Robinson, Knutson, Smith & Schnell violated their duty under Marlowe and Ford to provide "Agent Approved" housing, despite Evenstad himself having obtained housing at 460 Pierce Street in St. Paul that his Agent Mark Weinke site visited, Approved and DOC's Kate Erickson approved funding for.

25. In other words, Defendants McDonald, Holmes, Robinson, Knutson, Smith & Schnell retaliated against Evenstad for his two federal lawsuits in this District: Evenstad v Schnell, et al. 20-CV-864 and Evenstad, et al. v Schnell, et al., 20-CV-885.

-8-

26. These same Defendants had Evenstad arrested, jailed, locked down 23 hours per day, subjected to COVID-19 at the Washington County Jail, where Evenstad was assaulted by another prisoner and subsequently punished for having been assaulted.

27. These Defendants failed to provide "Agent Approved" housing for Evenstad during the 17 days leading to his HRU hearing before Defendant McDonald. These Defendants individually and collectively in their Individual and Official Capacities gave the Minnesota Court of Appeals and the Minnesota Supreme Court the legal equivalent of the middle finger with respect to the Marlowe and Ford decisions rendered by these Courts.

28. These Defendants violated Evenstad's Due Process rights by McDonald's failure/refusal to rule on several motions Evenstad made on the record for dismissal with prejudice, denial of Evenstad's right to confront his accusers (Tolletson, Barth, Weinke & Jackson) or even provide Evenstad with the minimum requirement under Morrisey v Brewer, 408 U.S. 471 (1972) of "f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrisey at 489. To date, June 21, 2020, Evenstad has not been provided a copy of "Judge" McDonald's report.

-9-

29. On May 26, 2020, Evenstad's parole was revoked by these same Defendants, and for the "violation" of homelessness Evenstad was sentenced in McDonald's Kangaroo Court/Star Chamber to up to 90 days.

30. Evenstad was transported to MCF-SCL's LUE on May 27, 2020, and double-bunked in a cell Governor Walz was quoted as saying was too small for one man (at MCF-Stillwater where the cells are larger Sq. Ft. than MCF-SCL) on a 14-Day COVID-19 "Quarantine."

31. Evenstad's complaints through MCF-SCL's Chain-of-Command (Defendants Gogglsberg, Halverson, Baburam, Krippner & Miles) regarding the deliberate indifference to and reckless endangerment of Evenstad's health & life by being double-bunked in a tiny cell with approximately 45 sq. ft. of living space in which social distancing is impossible and locked in 23.5 hours per day fell on deaf ears.

32. LUE prohibits televisions, radios, recreation in the gym or yard, access to the library or library books and allows between 30 minutes to 50 minutes per day out of cell time. Other than disciplinary seg, no other unit in the DOC is as punitive and restrictive.

33. From line staff through Sgts, Lts, Program Directors & Administrators, SCL Staff/Admin. are ignorant of and

oblivious to the 2019 OLA Report "Safety in Minnesota Correctional Facilities," which Evenstad obtained and read and studied at great length.

34. The conditions of confinement in LUE easily constitute the "significant and atypical hardship" that <u>Sandin v Connor</u> holds to be unconstitutional. Double bunked prisoners in LUE are allowed less than four *adatait* hours per week out of cell (4.5 hrs) as 5 days/wk Flag (out of cell time) is :50 and on Saturday is :30 and Wednesday is :30 minutes. Flags were :30 every day for a period until Evenstad's grievance was upheld and Flags returned to :50 x 5. Evenstad asserts conditions in LUE though generally limited to about 45-60 days prior to movement to a different unit or prison violate the Eighth Amendment's prohibition on cruel & unusual punishment.

36. Evenstad made verbal and written complaints to Defendants Goggisberg, Halvorson, Baburam, Kripper & Miles regarding Defendant Iacono's abusive and harassive use of the term "offender" on average over 50 times per shift over the loudspeaker but refused to adequately supervise or discipline him for his intentional use of "Offender" to antagonize & provoke prisoners, including Evenstad who objects to the dehumanizing and inaccurate terminology as Evenstad maintains his innocence and asserts he is a Political Prisoner.

—11—

37. Defendants Iacono, Krengel, Baird, Halverson, Baburam, Raden, Krippner, Miles, Robinson, Knutson, Smith & Schnell violate prisoners due process rights at MCF-SCL daily by violating the Informal Discipline Policy - LOP.

38. Under Policy, LOP can be pushed out or start date extended by the accused prisoner up to 7 days to, for one reason, allow an appeal to the Unit LT/Designee, which must occur within 3 business days. All other prisons except MCF-SCL follow LOP Policy.

39. On June 17, 2020, Defendant Iacono called Evenstad to the Control Center: "OFFENDER Evenstad report..." Upon arriving at Control Center or "Bubble" Iacono presented Evenstad paperwork with 3 days of LOP set to start the following day (6/18) for allegedly yelling out of his cell.

40. When Evenstad attempted to inform Defendant Iacono he was exercising his right, per policy, to start the LOP on June 25 to allow time to appeal, Iacono went to his radio to call the Security Squad stating "OFFENDER refusing to follow Directives" when no directive(s) were given.

41. Defendant Iacono violated Evenstad's rights by committing First Amendment retaliation by fabricating the LOP charge and the refusing directives charge which resulted in Evenstad being placed in Seg in a Closed Door Cell, where there was no ventilation.

-12-

42. Defendants Coggisberg, Halvorson, Krippner, Miles, Knutson, Larson, Huot, Baird, Krenzel, Raden, Baburam, Smith, Schnell, Iacono & Robinson are liable and responsible for the 72 hours of mental & physical torture Evenstad suffered in the Box – the closed front cell where only a tiny crack between the cell door and the rest of the solid front allowed any air into the cell. Several open front cells were empty.

43. On Wednesday, June 18 the temp exceeded 110° in that box and the humidy & dew points were tropical and oppressive. Defendants in 42. ante refused to move Evenstad to an open front (bars) cell that had ventilation and was 20 degrees or more cooler. Defendants Krenzel and Baird were repeatedly pled with by Evenstad to be placed in an open front cell – even if temporary until the temp reduced – and were told Evenstad was having great difficulty breathing and had to use his albuterol inhaler 4x with health services advising more than 4x in 24 hrs could be fatal. The rest of the defendants in 42. are in the chains-of-command and responsible for the torture Evenstad endured. Defendant Huot allowed Evenstad to suffer the mental torture of feeling suffocation and Defendant Larson the physical effects: heat stress and suffocation.

-13-

44. Defendants in 42. violate LOP policy also by treating the Flag (out of cell) time as a "privilege" when it is a prisoner right. Illegal, summary punishment is the result of this violation as prisoners are forced under threat of Seg to stay in their cells up to 9 days at a time, with

45. fifteen minute showers provided instead of the hour out for "shower and exercise" mandated by law, the Constitution & ACA Standards. Telephones and Kiosk can be prohibited on LOP but not the Flag time. MCF-SCL is the only prison that denies Flag on LOP. Evenstad was denied any out of cell time for exercise or shower on June 17 & 18, and denied exercise on June 19 & 20 — only allowed to shower. This was Illegal, summary punishment and a violation of DOC policy and Evenstad's Due Process rights.

45. Evenstad's release plan has changed from ISR to Standard Parole with Hennepin County, which means Evenstad can be released to a homeless shelter as the "address" but to date has been held in prison.

46. Defendants Schnell, Smith, Knutson, Robinson, Hust, Larson, Miles, Baburam, Halvorson & Kripper are liable/responsible for the double bunking during COVID-19 Quarantines & the mental anxiety, fear, nightmares, PTSD, Panic Attacks caused.

-14-

## Relief Requested

B. Enter a preliminary and then Permanent injunction barring Defendants from double-bunking prisoners on COVID-19 Quarantine status due to the obvious risks and dangers.

47. Evenstad has been denied the ability to find housing or employment due to the Internet bans by law & policy.

## CLAIMS

48. Count I: First Amendment retaliation (Schnell, Holmes, McDonald, Iacono, Smith, Knutson, Robinson);

49. Count II: Due Process violations & Illegal Summary Punishment (Schnell, Smith, Knutson, Miles, Krippner, McDonald, Holmes, Raden, Baburam, Krengel, Bairel, Halvorson, Iacono, Baggsberg)

50. Count III. 8th Amendment: Cruel & Unusual Punishment (Torture) (All Defendants);

51. Count IV. First Amendment denial of Internet including social media violating Packingham v N.C.

## DAMAGES DEMANDS

Evenstad seeks $500,000 in Total Damages: $100,000 in Actual Damages & $400,000 in Punitive Damages.

## Relief Requested

Evenstad respectfully requests that this Court:

A. Enter a declaration that Minn. Stat § 243.55Y, Sub. 1 and DOC Policy 303.040 are unconstitutional both on their face(s) and as applied to Evenstad in violation of his First Amendment rights under the U.S. Constitution.

*B. SEE TOP OF PAGE*

Dated: June 21, 2020

Tom Evenstad
THOMAS EVENSTAD
#172482
2305 Minnesota Blvd. SE.
St. Cloud, MN 56304

-15-