## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas Evenstad,                                Case No. 20-cv-1464 (WMW/DTS)

      Plaintiff,

v.                                              **REPORT AND RECOMMENDATION**

Paul Schnell, *et al.*,

      Defendants.

This matter is before the Court on the Defendants' Motion to Dismiss. Dkt. No. 26. For the reasons that follow, the Court recommends that this action be dismissed without prejudice for failure to prosecute. Alternatively, if the District Judge elects to consider the merits of the motion to dismiss, the Court recommends that it be granted and this action be dismissed, partially without prejudice for lack of jurisdiction and partially with prejudice for failure to state a claim.

## FAILURE TO PROSECUTE

Defendants filed their motion to dismiss Thomas Evenstad's complaint on March 23, 2021, but Evenstad did not file any response. On September 1, 2021, the Honorable Katherine Menendez, the Magistrate Judge then assigned to the case,[1] issued an Order finding that Evenstad failed to timely respond, and advising that if Evenstad failed to seek leave to file an untimely memorandum, it would be recommended that his case be

---

[1] Judge Menendez has since been confirmed as a United States District Judge for the District of Minnesota, leading this case to be reassigned to the undersigned Magistrate Judge.

dismissed for failure to prosecute. Dkt. No. 32. Evenstad requested such an extension, which the Court granted on October 6, 2021. Dkt. Nos. 33, 35. In the October 6th Order, Judge Menendez required Evenstad to file a response to the motion to dismiss within 30 days. Dkt. No. 35 at 3. The Court also referred Evenstad to the Federal Bar Association's *Pro Se* Project, observing that such a referral had been contemplated earlier in the litigation, but was not made. Nevertheless, based on a review of the record, Judge Menendez found "that the referral process does not justify delaying consideration of the motion to dismiss any further." Dkt. No. 35 at 2 n.1. More than 30 days have passed since the October 6th Order was issued, and Evenstad has filed no response.

Under Federal Rule of Civil Procedure 41(b), "a defendant may move to dismiss the action or any claim against it" when the plaintiff "fails to prosecute or comply with [the Fed. R. Civ. P.] or a court order." But a court can dismiss a plaintiff's case for failure to prosecute on its own. *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). Whether to dismiss an action on this basis is a matter left to the district court's discretion. *Henderson v. Renaissance Grand Hotel*, 267 Fed. App'x 496, 497 (8th Cir. 2008) ("A district court has discretion to dismiss an action under Rule 41(b) for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order.").

Although dismissal under Rule 41(b) operates as an adjudication on the merits unless a dismissal order states otherwise, the Eighth Circuit has cautioned that "dismissal

with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000). To support a dismissal with prejudice, a finding of bad faith is not required, but a court must find that the plaintiff "acted intentionally as opposed to accidentally or involuntarily." *Id.* (internal quotation marks omitted). In determining whether to dismiss with or without prejudice, "'[a] district court should weigh its need to advance its burdened docket against the consequence of irrevocably extinguishing the litigant's claim and consider whether a less severe sanction could remedy the effect of the litigant's transgressions on the court and the resulting prejudice to the opposing party.'" *Id.* (quoting *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997)).

The record in this case supports a finding that Evenstad has failed to prosecute his claims. He filed his complaint and an IFP application in June of 2020. His IFP application was granted and completed U.S. Marshals Service Forms were received by the Clerk of Court on January 14, 2021. However, since that time, Evenstad's efforts to move the litigation forward is limited to his request for leave to file an untimely memorandum, which had to be prompted by the Court. The September 1, 2021 Order noted that he had not complied with the deadlines established by Local Rule 7.1, and gave him a chance to seek leave to file an untimely memorandum. That Order warned Evenstad that his failure to seek leave would lead to a recommendation of dismissal for failure to prosecute. When Evenstad requested permission to file a late memorandum, the Court allowed him to do so and set a deadline for the response, which he has never

filed even though the Clerk of Court provided Evenstad with a copy of the Defendants'
moving papers.

Though the procedural history here does not suggest that Evenstad has entirely
abandoned the litigation, he has taken no meaningful steps to prosecute his case. It is
noteworthy that even after he was warned of the consequences of failing to prosecute his
case Evenstad failed to respond to the Defendants' motion. *See Hunt*, 203 F.3d at 527
("Although we have encouraged district courts to warn litigants when they are 'skating on
the thin ice of dismissal,' such admonitions are not necessary to sustain a Rule 41(b)
dismissal.") (quoting *Rodgers v. Univ. of Missouri*, 135 F.3d 1216, 1221 (8th Cir. 1998)).
For these reasons, this Court concludes that Evenstad has failed to prosecute his action
and recommends this action be dismissed as a result.

However, the record does not establish that Evenstad's conduct warrants
dismissal with prejudice, because it has not been demonstrated that Evenstad's inaction
was intentional, rather than accidental or involuntary, and there is no indication that the
Defendants have been prejudiced by it. *See Warnert v. Scott Cty. Sheriff's Dep't*, No. 14-
cv-256, 2016 WL 3566206, at *2 (D. Minn. June 27, 2016) (modifying R&R recommending
dismissal to be without prejudice where the record did not provide a "basis to conclude
[the plaintiff's] conduct is sufficiently egregious to warrant extinguishing his claims without
the possibility of revival"); *Lee v. Slater*, No. 15-cv-4379, 2016 WL 2869757, at *2 (D.
Minn. May 17, 2016) (concluding that dismissal without prejudice was appropriate where
the plaintiff failed to comply with an order requiring her to file an amended complaint and
show cause why the court should not abstain from hearing the case, but the conduct was
not sufficiently egregious to support dismissal with prejudice).

Accordingly, the Court recommends that this case be dismissed without prejudice for failure to prosecute[2] and that Defendants' motion to dismiss be denied as moot.

## MERITS DISCUSSION

### I.    Background

Evenstad brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. He names the following individuals and entities as Defendants:

- Paul Schnell, the Commissioner of the Minnesota Department of Corrections ("DOC");
- Michelle Smith, the DOC's Deputy Commissioner;
- Nate Knudson, a DOC Assistant Commissioner;
- Nan Larson, Health Services Director;
- Steve Huot, Behavioral Services Director;
- Karen Robinson, Central Office Policy and Legal Director;
- Rebecca Holmes, HRU Director;
- Will McDonald, HRU Hearing Officer;
- Eddie Miles, Warden of the Minnesota Correctional Facility in St. Cloud, MN;
- Carol Krippner, Associate Warden;
- Roger Baburam, Program Director;
- Dan Raden, Program Director;
- Lt. Erik Halvorson;
- Lt. Brant Baird;
- Sgt. Matthew Krengel;
- Sgt. Kenneth Goggisberg;
- Shawn Iacono, Correctional Officer;
- Minnesota Department of Corrections; and
- The State of Minnesota.

Dkt. No. 1 at 1; Dkt. No. 26 n.1 (providing the first names for several of the Defendants).

On April 17, 2019, Evenstad was sentenced to a term of imprisonment at the Minnesota Correctional Facility in St. Cloud (MCF-SC) for 46 months. *State v. Evenstad*,

---

[2] Under Fed. R. Civ. P. 72 and D. Minn. LR 72.2, there is a period for Evenstad to file objections to the recommendation that this case should be dismissed without prejudice for failure to prosecute. If Evenstad does object, it is certainly possible that the District Judge would decline to adopt the foregoing recommendation. As a result, the undersigned addresses the merits of the Defendants' motion to dismiss below, and offers alternative recommendations for resolution of that motion.

No. 27-cr-14-10497, https://www.mncourts.gov/Access-Case-Records/MCRO.aspx. On April 27, 2020, Evenstad was released on parole under the supervision of Ramsey County Community Corrections. He was placed on "intensive supervised release," or "ISR." However, on May 26, 2020, his parole was revoked for up to 90 days. Dkt. No. 1 ¶¶ 3–4, 21, 23, 29. He alleges that his parole was revoked "solely because of the DOC's failure/refusal to provide suitable (and constitutional) housing…." Dkt. No. 1 ¶ 4. Evenstad states that on May 9, 2020, he was arrested because "RS Eden terminat[ed] Evenstad from its program despite Evenstad's program compliance and absence of major or serious program violations." Dkt. No. 1 ¶ 23. Evenstad alleges that he was sent to prison during the height of the COVID-19 pandemic because he was homeless, even though he was over 54 years old and in poor health, making him at greater risk of severe complications from possible infection with the coronavirus. Dkt. No. 1 ¶ 5.

Between May 9th and May 26th, Evenstad asserts that Defendants McDonald, Holmes, Robinson, Knutson, Smith and Schnell failed to provide him with "agent approved" housing, even though he had obtained such housing, and DOC employee Kate Erickson approved funding for it. Dkt. No. 1 ¶ 24. Evenstad asserts that he was entitled to such housing between his arrest on May 9th and his hearing before Defendant McDonald on the parole violation. Dkt. No. 1 ¶ 27. He alleges that the same list of Defendants retaliated against him for filing lawsuits in the District of Minnesota. Dkt. No. 1 ¶¶ 22, 25. These same Defendants were allegedly responsible for Evenstad being arrested, jailed, and locked down for 23 hours per day. Evenstad was also allegedly exposed to COVID-19 while at Washington County Jail and was assaulted by another prisoner, for which Evenstad was punished. Dkt. No. 1 ¶ 26.

When Evenstad had his hearing before Defendant McDonald on the parole violation, he claims that McDonald failed or refused to rule on his motions for dismissal. Dkt. No. 1 ¶ 28. Evenstad also claims he was denied the right to confront his accusers and was not provided with a written statement by the fact-finder regarding the evidence relied on and the reasons for revoking his parole. Dkt. No. 1 ¶ 28.

When he was sentenced on the parole violation, Evenstad was sent to Living Unit E ("LUE") at MCF-SC, which is the intake and orientation unit for all male prisoners entering the facility, including those on supervised release violations. Dkt. No. 1 ¶¶ 2, 3. Evenstad claims that the LUE at MCF-SC has no gym, yard, library, televisions, radios, or books and that he has been subjected to double-bunking, including during a 14-day mandatory quarantine period upon arriving at the facility. Dkt. No. 1 ¶¶ 7, 30. In the LUE, inmates are only allowed 30-50 minutes per day out of their cells, which is akin to only the disciplinary segregation unit in DOC facilities. Dkt. No. 1 ¶¶ 32, 34. Inmates are allegedly held in the LUE for 45-60 days until they are sent to a different unit or a different prison. Dkt. No. 1 ¶ 35.

While in the LUE, Evenstad claims he was subjected to abusive and harassing use of the term "offender" by Defendant Iacono. Dkt. No. 1 ¶ 36. Iacono allegedly used the term "over 50 times per shift over the loudspeaker," which he did to "antagonize and provoke prisoners…." Dkt. No. 1 ¶ 36.

Mr. Evenstad also claims that Defendants Iacono, Krengel, Baird, Halvorson, Baburam, Raden, Krippner, Miles, Robinson, Knutson, Smith, and Schnell fail to adhere to the DOC's "informal discipline policy." Dkt. No. 1 ¶ 37. Evenstad asserts that under this informal policy, the time between an inmate's violation of a facility rule or policy and when

he is placed in a disciplinary housing is extended for up to seven days. Dkt. No. 1 ¶ 38. Every DOC facility except for MCF-SC allegedly follows this policy. Dkt. No. 1 ¶ 38. On June 17, 2020, Evenstad claims that Iacono wrote him up for yelling out of his cell, for which he would be sent to disciplinary housing the following day. Dkt. No. 1 ¶ 39. When Evenstad sought to invoke the informal policy to extend the time before being relocated to disciplinary housing, Iacono put out a radio call to security accusing Evenstad of refusing to follow directives, "when no directives were given." Dkt. No. 1 ¶ 40. Evenstad claims that Iacono fabricated both these charges in retaliation for Evenstad's exercise of his First Amendment rights. Dkt. No. 1 ¶ 41.

Evenstad was sent to segregated housing for 72 hours in a "closed door cell, where there was no ventilation." Dkt. No. 1 ¶¶ 41, 42. On June 18, 2020, the temperature inside the cell exceeded 110 degrees  and the "humidity and due points were tropical and oppressive." Dkt. No. 1  ¶ 43. Defendants Goggisberg, Halvorson, Krippner, Miles, Knutson, Larson, Huot, Baird, Krengel, Raden, Baburam, Smith, Schnell, and Robinson refused to move Evenstad to a cooler open-front cell with ventilation, despite his complaints that he was having difficulty breathing and needed to use his albuterol inhaler more often than was safely allowed. Dkt. No. 1 ¶ 43.

Defendants Goggisberg, Halvorson, Krippner, Miles, Knutson, Larson, Huot, Baird, Krengel, Raden, Baburam, Smith, Schnell, and Robinson also treat out-of-cell time (also referred to as "flag time") as a privilege rather than a right, resulting in summary punishment. Prisoners are allegedly threatened with segregated housing and to avoid it, are forced to stay in their cells for up to 9 days at a time, with only 15-minute showers, rather than the 1-hour period for showering and exercise that they should receive. Dkt.

No. 1 ¶ 44. MCF-SC prohibits the use of telephones during flag time. Dkt. No. 1 ¶ 45. Evenstad received no flag time for exercise or a shower on June 17 or 18, 2020, and was denied exercise time on June 19 and 20, 2020, but was allowed to shower. Dkt. No. 1 ¶ 44.

Further, Evenstad asserts that under Minn. Stat. § 243.556, subd. 1,[3] and DOC Policy 303.040, inmates are prohibited from accessing the internet and social media applications. Dkt. No. 1 ¶¶ 9, 30. Evenstad complained about the conditions in MCF-SC to Defendants Goggisberg, Halvorson, Baburam, Krippner, and Miles, but his complaints "fell on deaf ears." Dkt. No. 1 ¶ 31.

Evenstad organizes his claims into four separate counts and seeks several forms of relief. In Count I, Evenstad asserts that Defendants Schnell, Holmes, McDonald, Iacono, Smith, Knutson and Robinson violated his First Amendment rights through retaliatory conduct. Dkt. No. 1 ¶ 48. In Count II, Evenstad alleges that Defendants Schnell, Smith, Knutson, Miles, Krippner, McDonald, Holmes, Raden, Baburam, Krengel, Baird, Halvorson, Iacono, and Goggisberg violated his constitutional due process rights by subjecting him to illegal, summary punishment. Dkt. No. 1 ¶ 49. In Count III, Evenstad claims that all the Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment and torture. Dkt. No. 1 ¶ 50. In Count IV, Evenstad asserts that his First Amendment right to access the internet, including social media, has been violated. Dkt. No. 1 ¶ 51. In Evenstad's prayer for relief, he seeks a preliminary and permanent injunction barring Defendants from double-bunking prisoners on COVID-19

---

[3] Under Minn. Stat. § 243.556, subd. 1, "[n]o adult inmate in a state correctional facility may use or have access to any Internet service or online service, except for work, educational, and vocational purposes approved by the commissioner."

quarantine status; $100,000 in actual damages and $400,000 in punitive damages; and a declaration that Minn. Stat. § 243.554, subd. 1, and DOC policy 303.040[4] are unconstitutional on their faces and as applied to Evenstad. Dkt. Nos. 1 at 15.

The Defendants bring their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), raising four distinct arguments. First, they contend that the Court lacks jurisdiction over any official-capacity claims for damages. Second, they argue that Evenstad has failed to plead sufficient facts to state any plausible claim for relief and that any individual-capacity claims should be dismissed under qualified immunity. Third, they argue that Evenstad's claims related to his supervised release are barred by *Heck v. Humphrey*. Finally, the Defendants argue that his Eighth Amendment and due process claims are, in part, barred by res judicata. For the reasons that follow, the Court recommends that Evenstad's claims be dismissed.

## II.    Legal Standards

Under Fed. R. Civ. P. 12(b)(1), when considering a challenge to its subject matter jurisdiction a court "must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). On a facial attack, "the court restricts itself to the face of the pleadings, … and the non-moving party receives the

---

[4] This DOC policy applies to all DOC facilities. Dkt. No. 28-1 at 1. It provides:

> Offenders/residents are not permitted access to the Internet, unless approved by the commissioner or designee for work, educational, and vocational purposes per Minn. Stat. § 243.556.

Dkt. No. 28-1 at 1. The Court finds that it is appropriate to consider this policy, which was attached to a declaration filed by the Defendants, because it is embraced by the pleadings and Evenstad has not disputed its authenticity. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (explaining the circumstances where the Court may consider documents that are embraced by the pleadings and matters of public record).

same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* However, "in a factual attack, the court considers matters outside the pleadings, … and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

On a motion to dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), courts accept as true the factual allegations, drawing reasonable inferences from the facts in favor of the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court's task is to determine whether the allegations are sufficient to "state a claim to relief that is plausible on its face." *Id.* However, courts need not accept as true any allegation that is "conclusory." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## III.    Analysis

### A.  Eleventh Amendment Immunity

The Defendants argue that the Court should dismiss Evenstad's claims for damages against them in their official capacities. Dkt. No. 27 at 8–9. This argument presents a facial attack to the Court's subject matter jurisdiction, so the Court limits itself to reviewing the face of Evenstad's complaint and takes reasonable inferences from the factual allegations in his favor. Applying that standard, the Court concludes that these claims are barred by the Eleventh Amendment.

Evenstad's claims against the State of Minnesota and the Minnesota Department of Corrections are barred by the Eleventh Amendment. *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (explaining that the § 1983 claims against a state and its agencies are barred by the Eleventh Amendment). Evenstad does not allege that the State of Minnesota has consented to be sued, nor that Congress has abrogated the State's immunity. *Hummel v. Minn. Dep't of Agriculture*, 430 F. Supp. 3d 581, 587 (D.

Minn. 2020). Nor can Evenstad recover damages against the individual Defendants whom he has sued in their official capacities because those claims are no different than claims against the State. *Murphy*, 127 F.3d at 754 (concluding that the Eleventh Amendment bars damages claims against individual defendants acting in their official capacities); *Hummel v*, 430 F. Supp. 3d at 587 ("The Eleventh Amendment also bars claims seeking damages from State officials sued in their official capacities."). Moreover, under § 1983, Evenstad cannot maintain an action against the State or its officials working in their official capacities because they are not considered "persons" within the meaning of the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

For these reasons, the Court lacks subject matter jurisdiction over damages claims against the State of Minnesota, the Minnesota Department of Corrections, and official-capacity damages claims, and they should be dismissed without prejudice.

### B. Failure to State a Claim

Defendants argue that Evenstad fails to state any plausible claim for relief against them and that they are immune from suit in their individual capacities based on qualified immunity. Dkt. No. 27 at 9–20. Because the Court concludes that Evenstad's allegations do not set forth any plausible claim for relief, his remaining claims should be dismissed. As a result, the Court need not reach the questions presented by qualified immunity.

#### 1. First Amendment Retaliation

Evenstad's complaint alleges two instances of retaliation in violation of his First Amendment rights: (1) he claims that Defendants McDonald, Holmes, Robinson, Knutson, Smith and Schnell retaliated against him for filing lawsuits in the District of Minnesota by failing to find him agent-approved housing; and (2) he claims that

Defendant Iacono retaliated against him for exercising his First Amendment rights by fabricating disciplinary charges, causing him to spend time in disciplinary segregation. Based on this Court's review of the complaint, it concludes that Evenstad has failed to state a First Amendment retaliation claim.

To state a First Amendment retaliation claim, a plaintiff must show "(1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [plaintiff's] exercise of his constitutional rights." *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002)).

With respect to the first of his retaliation claims, Evenstad does not plead any facts permitting a reasonable inference that any of the Defendants allegedly involved in failing to procure agent-approved housing for him did so because he filed the lawsuits he references. He does not allege that any of these Defendants were aware of the lawsuits he filed, nor does he plead facts from which it could be inferred that they harbored any retaliatory animus motivating a decision regarding his housing. The Court notes that McDonald, Holmes, Robinson, Knutson, Smith and Schnell are not among those sued in either *Evenstad v. Hood, et al.*, No. 20-cv-1101, or *Evenstad v. Klavins, et al.*, No. 20-cv-1119. With respect to the other lawsuits he references—*Evenstad v. Schnell, et al.*, No. 20-cv-864, and *Evenstad, et al. v. Schnell, et al.,* No. 20-cv-885—the complaint offers nothing more than a conclusory assertion that the Defendants retaliated against Evenstad. Such bare legal conclusions, which the Court does not accept as true under

13

the governing legal standard, are insufficient, and his pleadings do not otherwise present any facts suggesting a requisite causal connection existed.

This first claim also fails because Evenstad does not allege how any of the Defendants he points to were personally involved in any alleged retaliatory conduct. As plaintiff in a § 1983 suit asserting that state officials violated his constitutional rights, Evenstad was required to plead facts that establish each defendant's personal involvement. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."). Evenstad simply lists several Defendants names and says that they all refused to provide him agent-approved housing in retaliation for filing federal lawsuits. From these generalized allegations, the Court cannot conclude that he has adequately pled the personal involvement of any of these Defendants in the alleged retaliation.

Nor does the complaint state a retaliation claim against Defendant Iacono in connection with disciplinary proceedings. Regarding the first retaliation claim—that Defendant Iacono retaliated against Evenstad by fabricating a report for allegedly yelling out of his cell [Dkt. No. 1 ¶¶ 39, 41]—Evenstad does not allege what constitutionally protected conduct he engaged in that allegedly motivated Iacono to fabricate that disciplinary charge. Thus, Evenstad has failed to allege facts establishing the first element of such a claim (that he engaged in a constitutionally protected activity prior to any

adverse action) as well as the third (that there was a causal connection between Iacono's allegedly fabricated charge and the protected activity).

Further, Evenstad alleges that Defendant Iacono retaliated against him by fabricating a charge of "refusing directives" in response to Evenstad's attempt to inform him about an informal disciplinary policy allowing him to start disciplinary segregation seven days later so that he had time to appeal. Dkt. No. 1 ¶ 37. He asserts only that Iacono called security indicating that there was an offender refusing to follow directives when no directives were given to Evenstad. Dkt. No. 1 ¶ 40. These allegations fail to establish the first and third elements of a retaliation claim. The Court is unaware of any case holding that an inmate's attempt to discuss an informal prison policy with a corrections officer constitutes constitutionally protected conduct, thus undermining the first element of a retaliation claim. Nor do Evenstad's allegations permit a reasonable inference that there was a causal connection between Iacono's statement that Evenstad refused to follow directives and Evenstad's attempt to discuss an informal disciplinary policy with him. Nothing in the complaint suggests that Iacono would have been affected in any meaningful way by Evenstad's attempt to invoke the alleged informal policy. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (concluding that the district court properly dismissed a retaliation claim where the plaintiff did not allege that the defendants "were involved in or affected by his previous litigation, and failed to allege sufficient facts upon which a retaliatory animus could be inferred"). Like the *Atkinson* court, this Court finds Evenstad's "allegations of retaliation [are] speculative and conclusory," *id.*, making dismissal of this claim appropriate.

For these reasons, the court concludes that Evenstad's First Amendment retaliation claims should be dismissed for failure to state a claim.

### 2. Due Process Claims

The Defendants argue that Evenstad's due process claims should be dismissed for failure to state a claim. Dkt. No. 27 at 16–19. Except with respect to the Defendants' arguments regarding certain of these claims, the Court agrees.

### a. Procedural Due Process Claim Against McDonald

In part, Evenstad claims that Defendant McDonald, who was the hearing officer assigned to his supervised release revocation proceeding, violated his due process rights by: (1) failing to rule on several of his motions; (2) prohibiting him from confronting his accusers; and (3) not providing him with a written explanation of the basis for the decision that he had violated the terms of his intensive supervised release. Defendants argue this claim should be dismissed because Evenstad "is not entitled to the same level of process as he received during his criminal prosecution and must 'demonstrate both a fundamental procedural error and prejudice as a result of the error.'" Dkt. No. 27 at 17.

The Due Process Clause of the Fourteenth Amendment has a procedural and a substantive component. "To establish a violation procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest." *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011) (internal quotation marks omitted). The plaintiff must also show that the defendants deprived him of such an interest without constitutionally adequate process. *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011).

16

In support of their argument, the Defendants rely on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Doe v. Holder*, 651 F.3d 824 (8th Cir. 2011). In *Morrissey*, the Supreme Court held that although the full range of protections due to an accused in a criminal proceeding are not required, due process protections apply in the context of parole revocation proceedings. 408 U.S. at 480–82. The constitutionally required procedures include the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Id.* at 489.

Defendants do not explain, at least with respect to McDonald, why Evenstad's allegations fail to adequately state a claim that he was deprived of constitutionally required procedures during his parole revocation hearing. He alleges that he was not given an opportunity to "confront his accusers," which can reasonably be read to suggest that he was deprived of the right to cross examine those who provided information adverse to him. And he asserts that he was not promptly provided a written explanation for the decision that his parole should be revoked. *Morrissey* indicates that due process requires these procedural protections for the parolee facing revocation proceedings.

*Doe* involved an alien's petition for review of the Board of Immigration Appeals' ("BIA") decision upholding an immigration judge's ("IJ") denial of the alien's application to defer his removal to Mexico. 651 F.3d at 826. Among other claims, Doe argued that the BIA and IJ violated his due process rights by failing to address issues he raised in his administrative appeal and evidence he presented to support his claims. *Id.* at 831. The *Doe* court explained that "[t]o establish a due process violation, Doe 'must demonstrate both a fundamental procedural error and prejudice as a result of the error.'" *Id.* (quoting *Camishi v. Holder*, 616 F.3d 883, 886 (8th Cir. 2010)). The court rejected Doe's claims because "an alien has no constitutional right to a full-blown written opinion on every issue," the BIA addressed all of the substantial issues Doe raised, and the IJ considered and discussed the very evidence Doe claimed the IJ ignored. *Id.* Evenstad's complaint does not plainly suffer from the same shortcomings as the alien's arguments in *Doe*, and the Defendants do not further explain their reliance on *Doe* in support of the motion to dismiss.

Defendants' arguments for dismissal of this claim are not persuasive, and the Court will not recommend dismissal of Evenstad's procedural due process claim against Defendant McDonald on this basis. Nonetheless, as explained below in section B.5., this claim is barred by *Heck v. Humphrey*.

However, to the extent that Evenstad claims any other Defendant violated his procedural due process rights in connection with his parole revocation hearing, the Court concludes that his complaint falls short of stating a viable claim. McDonald is the only Defendant whose personal involvement is alleged with any specificity in Evenstad's complaint. Evenstad fails to state a claim against any of the other Defendants with respect

to the parole revocation procedures because he does not explain how any of them were personally involved in the allegedly flawed revocation proceeding.

### b. Procedural Due Process Claim for Disciplinary Segregation

In his complaint, Evenstad asserts that Defendant Iacono fabricated disciplinary charges that he (1) violated prison rules by yelling out of his cell and (2) refused to follow directives. Evenstad further alleges that he was sent to the disciplinary unit before he had an opportunity to appeal the charges against him pursuant to an informal policy. Evenstad asserts that he was in the "box" for 72 hours, and during that time, he was kept in a "closed front cell" without sufficient ventilation. He asserts that the temperatures exceeded 110 degrees and he was subjected to high humidity. Evenstad claims that he was forced to use his inhaler in these conditions more often than his physician's instructions permit. These allegations, especially coupled with Evenstad's references to his due process rights, can reasonably be construed to allege a procedural due process claim. Defendants move to dismiss Evenstad's due process claims related to his placement in segregated housing for violations of prison rules, arguing that Evenstad has failed to allege facts sufficient to implicate a constitutionally protected liberty interest. Dkt. No. 27 at 16–17.

To implicate a constitutionally protected liberty interest in the context of disciplinary segregation, an inmate must allege that he was subjected to an atypical and significant hardship in comparison to the ordinary incidents of prison life. *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) ("An inmate who makes a due process challenge to his segregated confinement must make a threshold showing that the deprivation of which he complains imposed an 'atypical and significant hardship.") (quotation marks omitted). However, "atypical and significant hardship is a question of fact that may require a fuller

record than the initial complaint."[5] *Id.* An inmate's complaint alleging a due process violation is properly subject to dismissal when it contains no allegations regarding the conditions of confinement in punitive segregation, and instead relies solely on the length of time that the individual spent in disciplinary segregation. *See id.*

Recently, the Eighth Circuit explained that although there is no "established baseline from which to measure what is atypical and significant in any particular prison system, . . . we have affirmatively held what does *not* constitute an atypical or significant deprivation." *Smith*, 954 F.3d at 1081–82 (emphasis in original, internal quotation marks omitted). "[D]emotion to segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 1082 (quoting *Phillips v. Norris*, 32 F.3d 844, 847 (8th Cir. 2003)). "As a result, to assert a liberty interest, the inmate must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id.* (cleaned up).

Courts have consistently held that a claim involving periods in segregation longer than three days at issue here does not *by itself* implicate a liberty interest.[6] But Evenstad does not allege a violation of his due process rights based *solely* on the duration of his punitive segregation. In suggesting that he has done so, Defendants have overlooked

---

[5] Although *Portley-El* characterized this as a question of fact, the Eighth Circuit recently clarified that, at the summary judgment phase, when the facts regarding an inmate's conditions of confinement in punitive or administrative segregation are undisputed, the atypical-and-significant-hardship issue "is a question of law for the court to determine. . . ." *Smith v. McKinney*, 954 F.3d 1075, 1081–82 & n.5 (8th Cir. 2020).

[6] *See, e.g.*, *Ballinger v. Cedar County, Mo.*, 810 F.3d 557, 562–63 (8th Cir. 2016) (finding no liberty interest implicated in case where the plaintiff alleged only that he was kept in solitary confinement for approximately one year, but did not describe a significant change in conditions); *see also King v. Dingle*, 702 F. Supp. 2d 1049, 1076 (D. Minn. 2010) (citing cases).

Evenstad's allegations regarding the conditions of confinement—he alleges that he was kept in a poorly ventilated, closed-front cell, with temperatures exceeding 110 degrees, and that these conditions are unlike those experienced by others in the same facility or even in other available cells within the segregated housing unit. Defendants do not point the Court to any case dismissing similar claims, and their reliance on *Portley-El* is misplaced—Portley-El made no comparable allegations describing the conditions of confinement. Therefore, the Court will not recommend dismissal of this claim based on the absence of an adequately alleged liberty interest.

Nevertheless, this procedural due process claim is deficient in other respects. Specifically, Evenstad has made no allegations that he was denied constitutionally required procedural protections when he was demoted to punitive segregation.

> To satisfy the requirements of due process, prison disciplinary hearings must provide inmates with the following: (1) written notice of the alleged disciplinary violation at least twenty-four hours before the hearing, (2) the right to call witnesses and offer evidence to the extent that the presentation of the defense does not threaten institutional safety, and (3) a written statement from the hearing officer containing the underlying reasons for the decision.

*Shannon v. Fabian*, No. 09-cv-3422, 2010 WL 1960181, at *4 (D. Minn. Mar. 8, 2010), *report and recommendation adopted,* No. 09-cv-3422, 2010 WL 1960148 (D. Minn. May 17, 2010). Evenstad's complaint contains no allegations indicating that he was denied these protections by any of the Defendants.[7] Because Evenstad has not said what

---

[7] Evenstad alleges that Iacono did not adhere to the DOC's informal policy that allegedly extends the time period before a period of disciplinary segregation begins. However, "DOC policies are not constitutional mandates," and "the Due Process Clause does not federalize state-law procedural requirements." *Shannon*, 2010 WL 1960181, at *5. To the extent Evenstad suggests that he was entitled to a hearing before he could be placed in segregation, several courts have held that such prehearing confinement does not

procedures he did not receive in connection with his disciplinary segregation, the Court recommends that this claim be dismissed. In addition, aside from his allegations regarding Iacono's fabrication of the charges, Evenstad fails to assert how any other Defendant was personally involved in a deprivation of constitutionally required procedures. Accordingly, his procedural due process claims connected to his demotion to disciplinary segregation should be dismissed.

### c. Substantive Due Process Claims

Although it is unclear, Evenstad may be asserting a substantive due process claim in connection with the conditions he faced during his punitive disciplinary segregation. The Court agrees with Defendants that Evenstad has failed to allege a viable substantive due process claim.

To plead a substantive due process claim, a plaintiff must show that the government action infringes a fundamental right in a way that is not narrowly tailored to a compelling state interest; or that the state engaged in conduct "that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of

---

necessarily violate due process. *See Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (finding 12 days of pre-hearing confinement in segregated housing unit did not implicate state created liberty interest); *Muhammad v. Wiley*, No. 06-cv-01128, 2008 WL 4305779, at *4 (D. Colo. Sept. 18, 2008), *aff'd*, 330 Fed. App'x 165 (10th Cir. 2009) (finding that placement in the SHU for 98 days prior to a disciplinary proceeding did not violate applicant's due process rights); *Boyd v. Anderson*, 265 F. Supp. 2d 952, 961 (N.D. Ind. 2003) ("Placing an inmate in disciplinary segregation, or in administrative segregation while disciplinary charges pend against him, does not directly implicate the due process clause, nor does it generally work an atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life.").

official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "[O]nly in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise." *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (internal quotation marks omitted).

Even liberally construed, Evenstad's allegations do not suggest that the Defendants engaged in any conduct infringing on a fundamental right. Inmates do not have a fundamental right to be housed in the general prison population. *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994). And although Evenstad describes conditions (high heat and humidity combined with poor ventilation) that would make any ordinary person uncomfortable, his allegations do not rise to the level of conscience-shocking behavior. *See, e.g.*, *Wickner v. Collelo*, No. 11-cv-3448, 2011 WL 6960975, at *3 (D. Minn. Dec. 14, 2011) (comparing the plaintiff's allegations to those found insufficient to support a due process claim in *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996), where the plaintiff alleged four days of segregated confinement where he was exposed to the stench of his own feces and raw sewage), *report and recommendation adopted*, 2012 WL 32940 (D. Minn. Jan. 6, 2012). Accordingly, Evenstad's substantive due process claim should be dismissed.

### 3. Eighth Amendment

Evenstad alleges that the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment based on the conditions he encountered when he was sent to MCF-SC following his parole revocation during the COVID-19 pandemic. In Living Unit E, inmates do not have access to the gym, yard, library, a television, radio, or books. Prisoners are double-bunked in small cells for over 23 hours

each day, including prisoners who were on the mandated 14-day quarantine period for those entering the institution. Evenstad further claims that his age and underlying health conditions placed him at higher risk of severe complications should he contract COVID-19. Specifically, he alleges that he suffers from high blood pressure treated with prescription medication and breathing problems treated with a prescription inhaler. Dkt. No. 1 ¶¶ 3, 5, 7, 30–32, 34.

The Eighth Amendment's prohibition on cruel and unusual punishments "prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, … or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (cleaned up). "Among unnecessary and wanton inflictions of pain are those that are totally without penological justification." *Id.* at 346 (internal quotation marks omitted). Conditions of confinement, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities." *Id.* at 347. In *Rhodes*, the Supreme Court rejected the inmates' claims that "double celling" them violated the Eighth Amendment because the practice did not deprive inmates of "essential food, medical care, or sanitation." *Id.* at 348. The Eighth Circuit has held that to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show that: (1) objectively the defendant's conduct deprived the plaintiff of the minimal civilized measure of life's necessities; and (2) subjectively, the defendant's conduct reflects deliberate indifference to the prisoner's health or safety. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). "To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.*

Evenstad's assertions that he did not have access to books, the television, library, a gym, the yard, or other privileges sometimes available to inmates does not state a claim for violation of his Eighth Amendment rights. None of these allegations suggest that he was deprived of essential food, medical care, or sanitation, nor that he was subjected to unnecessary and wanton infliction of pain.

Further, Evenstad's allegations regarding the conditions of confinement in the LUE do not state a claim for relief because he does not allege facts supporting a reasonable inference that any of the Defendants acted with deliberate indifference to his health or safety. Evenstad does not allege that any of the Defendants chose to place him in LUE, double-bunk him with other inmates, quarantine him for 14 days upon his arrival, and restrict his movements and recreational opportunities within the prison despite knowing or inferring that doing so would pose a substantial risk of serious harm.[8] Though he claims his age and medical conditions place him at a greater risk, he does not suggest that any of the Defendants knew about his high blood pressure or breathing problems requiring the use of an inhaler before he was placed in the LUE. Based on the absence of allegations in the complaint supporting an inference that any Defendant acted with the

---

[8] Courts have recently rejected Eighth Amendment claims based on facilities' responses to the COVID-19 pandemic where inmates alleged they were unable to socially distance because of the small size of their cells. *See, e.g.*, *Frohlich v. United States*, No. 20-cv-2692, 2021 WL 2531188, at *3 (D. Minn. June 21, 2021) (citing *Smith v. Jeffreys*, No. 20-1421, 2021 WL 918057, at *2 (C.D. Ill. Mar. 10, 2021) (rejecting Eighth Amendment claim based on failure to socially distance in prison); *Williams v. Nevada*, No. 3:20-cv-00223, 2020 WL 1876220, at *4 (D. Nev. Apr. 15, 2020) (rejecting Eighth Amendment claim based on inmate's inability to socially distance when inmate had not shown that "Defendant knew of these conditions, had the authority, ability, and resources to change these conditions without endangering other prisoners at similar risk, but nevertheless unreasonably chose not to change these conditions")).

culpable state of mind required to support a deliberate indifference claim, this Court similarly concludes that Evenstad has failed to state a claim here.

Finally, the Court notes that Evenstad alleges that several Defendants had him arrested and subjected to COVID-19 at the Washington County Jail, where he was assaulted by another prisoner and subsequently punished. Dkt. No. 1 ¶ 26. To the extent Evenstad seeks to assert an Eighth Amendment claim based on this allegation, the Court concludes that he has failed to state a claim because he does not plead any facts showing that any Defendant knew of a substantial risk that he would be exposed to COVID-19 at the Washington County Jail, and deliberately disregarded that risk. Nor did he plead facts showing that any Defendant deliberately failed to protect him from an inmate at the jail despite being aware of a substantial risk he would be assaulted by another prisoner there. *See, e.g.*, *Tribble v. Arkansas Dep't of Human Servs.*, 77 F.3d 268, 270 (8th Cir. 1996) ("For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm[, and] that a prison official must have a sufficiently culpable state of mind, namely, one of deliberate indifference to inmate health or safety . . . .") (internal quotation marks and citations omitted).

For these reasons, Evenstad's Eighth Amendment claims should be dismissed.

### 4.  First Amendment: Access to Internet and Social Media

Evenstad claims that the Minnesota law and DOC policy governing inmate access to the internet are unconstitutional on their face and as applied to him. The statute at issue, Minn. Stat. § 243.556, subd. 1, provides: "No adult inmate in a state correctional facility may use or have access to any Internet service or online service, except for work,

educational, and vocational purposes approved by the commissioner." The DOC Policy at issue, *Use of Electronic Equipment by Offenders/Residents* 303.040, states: "Offenders/residents are not permitted access to the Internet, unless approved by the commissioner or designee for work, educational, and vocational purposes per Minn. Stat. § 243.556." Dkt. No. 28-1 at 2.

Although inmates do not lose all First Amendment protections, prisons may still justifiably place restrictions on those rights. *Turner v. Safley*, 428 U.S. 78 (1981). Prison policies that restrict inmate's First Amendment rights are valid if they are reasonably related to legitimate penological interests. *Id.* at 89. Under *Turner*, courts consider the following four factors:

> (1) whether there is a valid rational connection between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests.

*Simpson v. Cty. of Cape Girardeau, Missouri*, 879 F.3d 273, 278 (8th Cir. 2018).

Here, under the DOC Policy and the Minnesota statute, Evenstad is permitted some access to the internet, "just not as much as he wants." *Jackson v. Dayton*, No. 17-cv-880, 2018 WL 4473403, at *16 (D. Minn. Apr. 2, 2018), *report and recommendation adopted*, 2018 WL 3696600 (D. Minn. Aug. 3, 2018). The *Jackson* court rejected a similar claim, applying the *Turner* factors as follows:

> [L]ooking at the *Turner* factors, Jackson's claims could not survive. There are valid, rational reasons for regulating prisoners' internet access. Despite regulated internet access, inmates are permitted other means to exercise their First Amendment rights, such as libraries, telephones, and mail. Prisoners' access to libraries is not unfettered. Much more compelling are the reasons based on sound policies to restrain Jackson's access to the

internet, including legitimate public safety means for regulating prisoner's access to the internet. As such, Jackson's claims pertaining to internet access should be denied for failure to state a claim.

*Id.*, 2018 WL 4473403, at *16. The same analysis applies here and warrants dismissal of Evenstad's claims.

Evenstad's reliance on the Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), does not persuade the Court that a different result is required. *Packingham* involved a state law that made it a felony for any registered sex offender to access a commercial social networking website where minors may be members or create personal web pages. *Id.* at 1733–34. In 2002, Packingham was convicted of a crime requiring him to register as a sex offender. In 2010, when a traffic ticket against Packingham was dismissed by a state court, he posted a message on his Facebook page celebrating his good fortune. *Id.* at 1734. A police officer investigating possible violations of the law prohibiting such a post determined that Packingham had violated the law, and he was indicted. *Id.* Packingham argued that the law violated his First Amendment rights, but the North Carolina Supreme Court upheld its constitutionality. *Id.* at 1735. The United States Supreme Court reversed, holding that the law was an impermissible restriction on lawful speech protected by the First Amendment. *Id.* at 1737. In reaching that conclusion, the *Packingham* Court considered it "unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences." *Id.* Thus, *Packingham* says little, if anything, about the scope of First Amendment rights of individuals, like Evenstad was when he filed this lawsuit, who are inmates serving their sentences in state prisons. And, unlike the law at issue in

*Packingham*, Evenstad does not allege that the DOC Policy or the Minnesota statute he seeks to invalidate implicate his internet or social media access when he is not in prison.

For these reasons, the Court concludes that Evenstad has failed to state a claim that the DOC Policy or the Minnesota statute are invalid, either facially or as applied to him.

### 5. *Heck v. Humphrey*

Defendants argue that Evenstad's claims regarding the revocation of his intensive supervised release are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Dkt. No. 27 at 20. The Court agrees.

Under *Heck*, "[a] claim is not cognizable under section 1983 where a judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence, unless the conviction or sentence has already been invalidated." *Wilson v. Lawrence Cnty., Mo.*, 154 F.3d 757, 760 (8th Cir. 1998). To show that a state court judgment has already been invalidated in his favor, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus…." *Heck*, 512 U.S. at 486–87. If success in a § 1983 action "would necessarily demonstrate the invalidity of confinement or its duration," then the action is barred regardless of whether the relief sought is damages or equitable relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

> Section 1983 claims that do not function as collateral attacks on the judgment itself, such as a claim for using the wrong procedures rather than reaching the wrong result, are not barred by *Heck*. However, *Heck* bars challenges to procedures that, if invalidated, would necessarily demonstrate the invalidity of confinement or its duration.

*Stevens v. Minn. Dep't of Corr.*, No. 20-cv-2172, 2021 WL 1667375, at *5 (D. Minn. Apr. 28, 2021) (internal quotation marks and citations omitted). The Eighth Circuit has applied *Heck* to cases challenging revocation of supervised release. *Marlowe v. Fabian*, 676 F.3d 743, 747 (8th Cir. 2012).

As discussed above, Evenstad claims that his constitutional rights were violated when Defendant McDonald[9] failed or refused to rule on Evenstad's motions to dismiss the allegations that he violated the terms of his parole. He also asserts that McDonald prohibited him from confronting his accusers and failed to provide him with a written decision explaining the basis for the revocation of his parole. In the section of his complaint listing his claims, Evenstad indicates that he was subjected to "illegal summary punishment." Dkt. No. 1 ¶ 49]. Evenstad also asserts that the basis for the revocation proceedings—several Defendants' alleged failure to provide agent-approved housing during his intensive supervised release—was legally flawed because it did not comply with Minnesota law. Dkt. No. 1 ¶¶ 4, 23–24[10].

Success on Evenstad's claims that his due process rights were violated in these ways during his parole revocation proceedings necessarily imply the invalidity of the judgment revoking his parole. If Evenstad establishes the procedural defects complained of he will have shown that there was an improper basis for initiating revocation proceedings, a failure to comply with state law requiring agent-approved housing, a failure

---

[9] Evenstad refers to other Defendants, but McDonald is the only Defendant who he alleges was personally responsible for the alleged deprivation of procedural protections to which he was entitled. Dkt. No. 1 ¶¶ 25–29.

[10] In his complaint, Evenstad cites *Marlowe v. Fabian*, 755 N.W.2d 792 (Minn. Ct. App. 2008), and *Ford v. Schnell*, 933 N.W.2d 393 (Minn. 2019), for the proposition that the Defendants were required to find him agent-approved housing after he was terminated from his parole housing.

to rule on his dismissal motions, a prohibition on allowing him to confront witnesses, and the absence of a written explanation for the revocation decision. Prevailing on the claims that these procedural defects violated his constitutional rights would, in turn, undermine the validity of the parole revocation. Such claims are barred by the rule in *Heck* because there is no allegation that the judgment revoking his parole has been invalidated in his favor.[11] *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (finding that Balisok could not use § 1983 to obtain damages and an accompanying declaration for the alleged use of unconstitutional procedure—a biased and deceitful decisionmaker—because success "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits"); *see also Graham v. Waters*, 805 Fed. App'x 572, 577 (10th Cir. 2020) (concluding that "if the district court were to have upheld Graham's claim for damages against the defendants for their alleged 'unlawful restriction of his liberty' and disregard for Colorado state law during his parole revocation proceedings, it would necessarily have spoken to the invalidity of Graham's ongoing confinement").

This is not a case where, for example, Evenstad seeks prospective injunctive relief that will not necessarily imply the invalidity of his May 2020 parole revocation. *See Edwards*, 520 U.S. at 648 (explaining that a prisoner's claim for injunctive relief barring future use of unconstitutional procedures was not barred because "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits"); *see also Wilkinson*, 544 U.S. at 82 (concluding that success on the prisoners' claims would not necessarily imply the invalidity of the procedures used to deny

---

[11] Though Evenstad is no longer in a DOC facility, the Eighth Circuit has held that *Heck*'s favorable termination requirement would still apply to such a claim. *Newmy v. Johnson*, 758 F.3d 1008, 1010 (8th Cir. 2014).

their parole eligibility or suitability because neither would mean "immediate release from confinement or a shorter stay in prison"). Evenstad's due process claims concerning his parole revocation are indistinguishable from others that have recently been dismissed by courts in this District. *See Stevens*, 2021 WL 1667375, at *5 (dismissing claims based on allegations of false and retaliatory conduct leading to revocation of conditional release and confinement under *Heck*); *Greene v. Osborne-Leivian*, No 19-cv-533, 2021 WL 949754, at *10–11 (D. Minn. Mar. 12, 2021) (concluding that plaintiff's allegations of false reports and other procedural issues resulting in parole revocation and imprisonment must be dismissed under *Heck*).

For these reasons, the Court concludes that Evenstad's due process claims challenging his parole revocation are barred by *Heck* because there is no allegation that the state court's revocation judgment has been invalidated.

### 6. Res Judicata

Defendants argue that Evenstad's due process claims concerning revocation of his intensive supervised release and his Eighth Amendment claims concerning the conditions at MCF-SC and COVID-19 are barred by res judicata. They point out that Evenstad raised essentially identical claims in a state habeas proceeding, that the habeas case involved Defendant Commissioner Schnell, and that his claims were rejected in a final judgment from the state district court. Dkt. No. 27 at 21–23. Because the Court has concluded that those same claims should be dismissed for other the reasons stated above, it is unnecessary to address Defendants' res judicata argument.

## RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that:

1.      This action be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute, and accordingly that Defendants' Motion to Dismiss [Dkt. No. 26] be **DENIED AS MOOT**.

2.      In the alternative, that Defendants' Motion to Dismiss [Dkt. No. 26] be **GRANTED** and this action be dismissed. Plaintiff's claims for damages against the Defendants in their official capacities should be dismissed without prejudice for lack of subject matter jurisdiction. His remaining claims should be dismissed with prejudice for failure to state a claim.


Dated: January 13, 2022                    _____s/David T. Schultz_____
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).